UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVID TROTH and JARI TROTH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-CV-1106-JD-MGG |
| | ) | |
| SETH WARFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In 2017, David Troth was interested in retiring from his job. David and his wife Jari approached Seth Warfield, seeking guidance on retirement plans. The Troths followed Mr. Warfield's advice and Mr. Troth retired in late 2017. Upon receiving his first benefits check, the Troths discovered Mr. Warfield's advice was faulty and Mr. Troth was now receiving significantly less benefits than anticipated under the plan. The Troths have brought a complaint alleging a host of claims against Mr. Warfield, his supervisor, Gary Aiello, and several related insurance companies. Mr. Warfield, Mr. Aiello, and Capital Keystone Group, Inc. (doing business as MyFedBenefits) now move to dismiss certain claims,[1] arguing the Troths have failed to state claims upon which relief can be granted. For the following reasons, the Court grants their motion only in part.

### I. FACTUAL BACKGROUND

Mr. Troth served in the United States Navy for ten years and retired from service in 1992. Two years later, Mr. Troth began working for the United States Postal Service. In 2017, Mr. Troth was contemplating the possibility of retiring from the postal service. The Troths began

---

[1] Mr. Warfield was not party to the motion but has since filed an unopposed motion to join it. [DE 36].

meeting with Seth Warfield sometime in March 2017 to discuss the logistics of Mr. Troth's retirement. In their meetings with Mr. Warfield, Mr. Troth emphasized that his retirement was contingent on his military service being recognized for purposes of receiving Social Security benefits. Mr. Warfield assured Mr. Troth his military service would be recognized. He further represented that Mr. Troth would be able to work after retirement with no penalty.

Mr. Warfield thereafter prepared a financial profile which the Troths allege contained false information. That financial profile was shown to several insurance companies and Mr. Warfield's supervisor, Gary Aiello, to perform a suitability review and determine the best retirement plan to accomplish Mr. Troth's expressed goals. Based on that financial profile, a retirement plan was developed. The plan recommended Mr. Troth transfer his entire thrift savings plan funds into an annuity owned by the defendants.[2] The plan recommended the Troths surrender their life insurance policies because the retirement plan had rendered them unnecessary. Mr. Warfield told the Troths it was a "no-brainer" for Mr. Troth to immediately retire. Based on this advice, Mr. Troth cancelled his life insurance benefits provided by Veterans Affairs and transferred his entire thrift savings plan into the retirement plan. The Troths also transferred or sold real estate as advised by Mr. Warfield and the plan.

Mr. Troth retired from the postal service on December 29, 2017. When Mr. Troth received his first retirement benefits in March 2018, his benefits were significantly less than what Mr. Warfield had represented they would be. Mr. Troth also discovered that he would be penalized if he earned over a certain annual income post retirement. The timing of his retirement also impacted Mrs. Troth's income and earning capacity. When the Troths approached Mr. Warfield about these developments, he reassured the Troths that this was a mistake by the

---

[2] The complaint is not clear as to which of the named insurance defendants owned or managed this annuity or if there are separate annuities.

Federal Employment Retirement Service (FERS) and that they had nothing to worry about. The Troths then contacted FERS and were informed that there was no mistake and that Mr. Troth's benefits would remain the same.

The Troths then met with Mr. Warfield's supervisor, Gary Aiello. Mr. Aiello informed the Troths that Mr. Troth's military service did not count towards retirement. Mr. Aiello informed the Troths that he had not reviewed the plan, but that a team of Mr. Warfield's superiors should have identified the error. The Troths requested an immediate return of the funds transferred from the thrift savings plan. Mr. Aiello urged the Troths to keep the funds in the plan; however, the Troths withdrew their funds from the retirement plan.

The Troths allege all defendants received a commission as a result of the retirement plan. They also allege Mr. Warfield was not licensed to advertise, sell, or give advice on the products and policies contained in the retirement plan. They brought this suit in state court on November 1, 2019, which the defendants subsequently removed on the basis of diversity jurisdiction. The Troths later filed an amended complaint, which is the operative complaint now at issue. [DE 20].

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need

only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

The sufficiency of the Troths' lengthy amended complaint (43 pages) and numerous legal claims contained therein are now being challenged by the defendants. After reviewing the parties' arguments, the Court finds that the complaint is a mixed bag. There are claims that are wholly or partially sufficient and others that must be dismissed in their entirety.

### A.    Negligence Per Se (Count II)

The Troths allege in Count II that Mr. Warfield committed several prohibited acts enumerated in Ind. Code § 27-1-15.6-12(b), part of the insurance producer code. They labeled this count as a claim of negligence *per se*; however, they are not tied to that label and can assert alternative legal theories. *See Hall v. Nalco Co.*, 534 F.3d 644, 649 n.3 (7th Cir. 2008) ("'[a] complaint need not identify a legal theory, and specifying an incorrect theory is not fatal' to a plaintiff's claim"); *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind 2014) (pleading in the alternative is permissible pursuant to Federal Rule of Civil Procedure 8).

In their motion to dismiss, the defendants argue that the Troths' claim of negligence per se under section 27-1-15.6-12 (section 12) must be dismissed because it does not provide a private cause of action. In response, the Troths maintain that Count II, as written, supports both a traditional negligence *per se* claim and a separate cause of action: "Plaintiffs rely on I.C. § 27-1-15.6 et seq. to support the negligence per se claim and a private right of action against Warfield." [DE 34 at 3]. Indiana courts have addressed the difference between "(1) a negligence-per-se

claim, in which a plaintiff argues that the defendant's violation of a statute or ordinance suffices to prove breach of an existing common-law duty of reasonable care, and (2) a private-right-of-action claim, in which a plaintiff asserts that a statute or ordinance, itself, created an enforceable duty." *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 543 (Ind. Ct. App. 2018). For the reasons discussed below, the Troths are precluded from relying on § 27-1-15.6 as a private right of action against Mr. Warfield but may proceed based on the traditional negligence per se claim. [DE 34 at 3].

### 1. Traditional Negligence Per Se

"Under that doctrine [of negligence per se], the unexcused violation of a statute or ordinance constitutes negligence per se if the provision (1) 'protect[s] the class of persons in which the plaintiff is included' and (2) 'protect[s] against the type of harm which has occurred as a result of the violation.'" *Stachowski*, 95 N.E.3d at 544 (quoting *City of Fort Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015)). The doctrine asks the Court "adopt the standard of conduct set forth in a statute . . . as the standard of conduct required under that preexisting duty[.]" *Id.; see also Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003) ("Under negligence per se, the law accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct."). But the violation of the statute does not create or satisfy the duty element of negligence. *See id.* at 544-45; *accord Vale Park Animal Hosp., LLC v. Project 64, LLC*, 2020 WL 1139413, at *2 (N.D. Ind. Mar. 9, 2020). Instead, the doctrine of negligence per se adopts the "standard of conduct set forth in a statute or ordinance . . . as the standard of conduct required under that preexisting duty, so that a violation of the statute or ordinance serves to satisfy the breach element of a negligence actions." *Stachowski*, 95 N.E.3d at 544. Here in

paragraphs 105 and 106 of the Amended Complaint, the Troths point to Indiana Code § 27-1-15.6-12 as the statute that Mr. Warfield violated. [DE 20 at 13].

The defendants argue that the Troths have improperly pleaded section 12 establishes a duty. This assertion is odd for a number of reasons. First, the Troths have never asserted section 12 as a basis of duty; in fact, their complaint states that "[a]s a result of [Mr. Warfield's] breaches," they have suffered damages. [DE 20 ¶ 107]. Second, the defendants, including Mr. Warfield, do not attack Count I of the complaint (negligence) which separately requires the Troths establish a duty. Third, the Troths clearly pleaded Mr. Warfield had a duty, separate from section 12, and that Mr. Warfield represented as much to them. [DE 20 ¶¶ 41, 122, 124, 126, 131].

An insurance agent, like Mr. Warfield, has a duty to a client only if he has a "special relationship" with the client. *Filip v. Block*, 879 N.E.2d 1076, 1085 (Ind. 2008) (citing *Craven v. State Farm Mut. Auto. Ins. Co*., 588 N.E.2d 1294, 1297 n.5 (Ind. Ct. App. 1992)); *accord Johnson,* 2008 WL 5396606 at *5. Although questions of fact are reserved for a later stage of litigation, suffice to say the Troths have pleaded facts suggesting such a special relationship, raising their claim for relief above the speculative level.[3] *Twombly*, 550 U.S. at 570. To the extent the Troths have alleged a claim of negligence *per se*, the Court denies the defendants' request to dismiss Count II.

### 2.  Private Right of Action

---

[3] Actions indicating a special relationship include: (1) exercising broad discretion to service the insured's needs; (2) counseling the insured concerning specialized insurance coverage; (3) holding oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) receiving compensation, above the customary premium paid, for the expert advice provided. *Johnson*, 2008 WL 5396606, *5-6 (citing *American Family Mutual Ins. Co. v. Dye*, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994)).

The doctrine of negligence *per se*, however, is separate from whether the statute provides a private cause of action. Where negligence *per se* "claims that a statute or ordinance should establish the applicable standard of conduct required under an existing duty of reasonable care, the issue when a plaintiff claims a private right of action is whether the legislative body intended to establish not just a standard of conduct but a duty enforceable by tort law[.]" *Stachowski*, 95 N.E.3d at 545 (internal citation omitted); *see also Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) ("[T]he mere fact that a statute defines due care does not in and of itself create a duty enforceable by tort law."). No Indiana court, or federal court applying Indiana law, has decided whether section 12 creates a private right of action. "Sitting in diversity, this court will rely on the substantive law of Indiana and attempt to predict how the Indiana Supreme Court would decide the issue presented here." *Vale Park Animal Hosp., LLC v. Project 64, LLC*, 2020 WL 1139413, at *3; *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir.1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

The legislature can either explicitly or implicitly create a private right of action. *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005). The parties seem to agree that the statute does not explicitly provide for a private right of action for damages. As for discerning any implicit intent to create a private right of action, the Indiana Supreme Court has "long been reluctant to infer this unwritten intent, since the legislature often creates rights of action using clear language." *Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 202 (Ind. 2017); *see also Vale Park Animal Hosp., LLC v. Project 64, LLC*, 2020 WL 1139413, at *3. When deciding whether the legislature intended to imply a cause of action, Indiana courts ask two questions: (1)

whether the statute was primarily designed to protect particular individuals or the public in general and (2) whether the statute includes an independent enforcement mechanism. *Doe*, 81 N.E.3d at 202-04; *Stachowski*, 95 N.E.3d at 545-46.

Overall, Chapter 15.6 of the statute titled "Insurance Producers," in which section 12 appears, seems intended to benefit the public at large *via* the general regulation of insurance producers. *See* Ind. Code § 27-1-15.6-1 (the chapter governs the "qualifications and procedures for the licensing of insurance producers"); *cf. Vale Park Animal Hosp., LLC*, 2020 WL 1139413 at *3 (finding Ind. Code § 25-4-1-26 did not provide a private cause of action because it "is part of a broad regulatory scheme designed to regulate the practice of architecture in Indiana for the benefit of the general public"). Even if section 12 is not for public benefit, the Court cannot infer a private cause of action because the statute also clearly has enforcement mechanisms built into it. Indiana courts will not find that a statute creates a private right of action if the statute contains "a comprehensive enforcement mechanism." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000), *superseded by statute on other grounds*, *Ghosh v. Ind. State Ethics Comm'n*, 911 N.E.2d 137 (Ind. Ct. App. 2009). "When it is unclear whether an administrative agency has the authority to enforce a specific statutory provision, a private right of action can be found." *See Johnson v. Lyon*, 2008 WL 5396606, *8 (S.D. Ind. Dec. 24, 2008), (citing *Galloway v. Hadley*, 881 N.E.2d 667, 673-74 (Ind. Ct. App. 2008)). But, Section 12 has such enforcement mechanisms built into it as the Commissioner of Insurance has the power to "reprimand, levy a civil penalty, place an insurance producer on probation," among several other enforcement options. Ind. Code § 27-1-15.6-12(b).

Clinging to the argument that section 12 provides a private right of action, the Troths point to *Johnson v. Lyon*, 2008 WL 5396606 (S.D. Ind. Dec. 24, 2008), but that case is not quite

on all fours. The court in *Johnson* was analyzing whether another section under the insurance producer chapter, 27-1-15.6-13 (section 13), provides a private cause of action. *Id.* at \*8. The court found the enforcement mechanisms in section 12 were not specific enough to "foreclose the possibility that [section 13] supports a private right of action." *Id.* In conclusion, the *Johnson* court withheld judgment as to whether section 13 in fact created a cause of action; instead, it made the narrow holding that section 12's enforcement mechanisms, as written, were not comprehensive enough to preclude a cause of action under section 13. *See id.* \*8 n.6.

Section 12's language makes clear, however, that an administrative agency—the Commissioner of Insurance—has the authority to enforce those violations enumerated in its subsections. Ind. Code § 27-1-15.6-12(b). The *Johnson* court seemed to contemplate this. 2008 WL 5396606, at \*8 ("Section 12 permits the Commissioner of Insurance to levy fines and other penalties for insurance producers who do not comply with insurance law."). Because section 12 has created an enforcement mechanism for those violations enumerated in its subsections, the Court finds it unlikely the Indiana Supreme Court would infer a private cause of action from its text. *See Doe*, 81 N.E.3d at 204 ("When a statute expressly provides one enforcement mechanism, courts may not engraft another. . . . Indiana courts find no private right of action where the General Assembly has provided independent enforcement—even if only an infraction."). Therefore, to the extent Count II of the amended complaint pleads that section 12 provides a private cause of action, the Court must dismiss it.

**B.      Fraud (Counts III and XIX)**

The Troths have pleaded claims of fraud against Mr. Warfield and MyFedBenefits. The defendants request the Court dismiss these claims for lack of particularity. The elements of actual fraud are as follows: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of

the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015). The defendants assert that the Troths' actual fraud counts must be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead fraud with sufficient particularity. [DE 23 at 9]. They also argue that the Troths' fraud claims against Mr. Warfield must be dismissed because the alleged misrepresentations are not statements of past or existing fact. *Id*. at 11. The Court addresses both arguments below.

### 1. Pleading Requirements for Fraud Claims

Normally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which requires only enough factual content to show that the claim is "plausible." *Iqbal*, 556 U.S. at 678. When pleading fraud, however, the federal rules set a higher bar. *See Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, 2018 WL 3830059, at *2 (N.D. Ind. Aug. 13, 2018). Federal Rule of Civil Procedure 9(b) states that in fraud cases, "a party must state with particularity the circumstances constituting fraud or mistake." This rule "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991).

To satisfy the heightened standard of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). Stated differently, a plaintiff pleading fraud must state "the who, what,

when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled.").

The Court will begin with the claims against Mr. Warfield. It is clear who the Troths are claiming made the fraudulent representations. It is also clear what they allege Mr. Warfield represented. [DE 20 ¶¶ 109-15]. For example, the Troths allege Mr. Warfield represented he was affiliated with FERS and was paid through MyFedBenefits. [*Id.* ¶ 109]. It is the other details of these allegedly fraudulent statements that the defendants find lacking.

The Troths do not list specific dates for the representations; instead, they are all alleged to have occurred from July 2017 through February of 2018. [*Id.* ¶¶ 109-15]. Courts have previously found timeframes or approximate dates such as this sufficient under Rule 9(b). *See, e.g.*, *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (allegations that the misrepresentation occurred "sometime in late August or early September 2003" satisfied Rule9(b)); *Neurology & Pain Mgmt. Assocs., P.C.*, 2018 WL 3830059, at *4 (finding a period of November 2012 to July 2015 satisfied 9(b)); *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Solutions LLC*, 2014 WL 6750042, at *4 (S.D. Ind. Dec. 1, 2014) ("periods of June 2003 and November 2006" satisfied Rule 9(b)); *Comentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1110 (N.D. Ind. 2011) ("[i]n or about February 2009" satisfied Rule 9(b)); *Greer v. Advanced Equities, Inc*., 683 F. Supp. 2d 761, 772 (N.D. Ill. 2010) ("The 'fall of 1999' or 'November 1999' . . . is specific enough under Rule 9(b).").

As to the questions of "where" and "how," the Troths plead that the representations were made at their meetings with Mr. Warfield in LaPorte County, Indiana. [DE 20 ¶¶ 24, 40, 41, 43]. These facts are particular enough to give Mr. Warfield notice of the claims against him. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (Rule 9(b) intends to provide "adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading"); *Vicom, Inc.*, 20 F.3d at 777-78 ("[F]air notice is '[p]erhaps the most basic consideration' underlying Rule 9(b)."). Although their complaint does not contain all the nitty-gritty, it provides those facts one expects to find in the first paragraph of a newspaper story. *United States ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d 939, 946 (N.D. Ill. 2004) (emphasizing that "[t]he first paragraph of a newspaper story is short and to the point" and that a complaint is sufficient if defendants "have sufficient notice of the fraud alleged against them and [plaintiff] alleges enough particular facts to foreclose fears of a fishing expedition"). The pleadings against Mr. Warfield are particular enough to satisfy Rule 9(b).

The same can be said for their claim of fraud against MyFedBenefits. In the Amended Complaint, the Troths claim that Mr. Warfield sold financial products and policies on behalf of MyFEDBenefits. [DE 20 at 2]. The Troths allege that Mr. Warfield represented to them that he was compensated by MyFEDBenefits and that he was an employee/agent of the MyFEDBenefits. *Id*. at 4. This certainly fulfills the "who" pleading requirements. Moreover, the Troths allege the exact same time frame for fraud as they did for Mr. Warfield since they allege that Mr. Warfield was acting as an employee of MyFEDBenefits, which fulfills the "when" pleading requirement. Even the title of the company, "MyFEDBenefits" demonstrates that it holds itself out to be a company related to the federal benefits program and that it was a quasi-

not-for-profit entity with the main goal of helping military veterans, such as Mr. Troth, retire. *Id.* at 37. The Troths also allege that MyFEDBenefits, acting through Mr. Warfield, represented superior knowledge of the Federal Employee Retirement System. *Id.* at 39. Again, these facts are particular enough to give MyFEDBenefits notice of the claims against it. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Thus the Court finds that the Troths have adequately met the required pleading standard for alleging fraud as required under Rule 9.

### 2. Required Elements of Fraud Claims

In another attempt to throw out the claims of actual fraud against Mr. Warfield, the defendants contend the Troths have not pleaded a misrepresentation of a past or existing fact. Under Indiana law, an essential element of a fraud claim is "a material misrepresentation of past or existing fact." *Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) (actual fraud) (citing *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992)); *Messmer v. KDK Fin. Servs.*, 83 N.E.3d 774, 781 (Ind. Ct. App. 2017) (constructive fraud). The law in Indiana is "well-settled that actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993).

The defendants argue the following are representations of future consequence: (1) that Mr. Troth's military time counted towards his Social Security Annuity; (2) that Mr. Troth could work without penalty after retiring; and (3) that Mr. Troth's insurance provided to him through Veterans Affairs was unnecessary under the proposed retirement plan. [DE 20 ¶¶ 111-13]. They argue these representations are of future consequence because they concerned Mr. Troth's retirement, which was in the future. That precise argument is illogical due to the very nature of fraud. In all cases of fraud, the act of reliance will come after the representation is made—that

does not make it any less a representation of fact and instead one of future consequence. Moreover, the Court finds *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 321 (Ind. Ct. App. 1991) is relevant to the representations Mr. Warfield made about the best retirement plan for Mr. Troth if and when he retired. In *Scott*, the Indiana appellate court concluded that "pure misrepresentations of law can constitute actionable fraud" where "a party claims a special knowledge or expertise in the law and induces another to rely on the claimed knowledge or expertise." *Id.* at 320. Here, the Troths alleged that Mr. Warfield represented to them that he was a financial advisor who was affiliated with the Federal Employment Retirement Service, that he was an employee/agent of MyFEDBenefits, and that he owed the Troths a fiduciary duty. [DE 20 4-5]. The Court finds these allegations sufficient to demonstrate that Mr. Warfield claimed a special knowledge or expertise in federal retirement planning. The Troths specifically alleged that "[Mr.] Warfield gained the trust and confidence of the Plaintiffs because of these representations," which led them to rely on his knowledge and expertise.

The defendants argue that three of the Plaintiffs' allegations were statements of future consequence and therefore do not support their fraud claims as a matter of law. The allegations are: Mr. Troth's military time would count towards his Social Security annuity, Mr. Troth would be able to work without penalty after retiring, and the plan did not require the Troths to carry life insurance policies. The Court finds that these statements are misstatements concerning features of Mr. Warfield's plan and are not statements of future consequence. *See Scott*, 571 N.E.2d at 321. The Troths allege that Mr. Warfield presented them with a "Financial Profile [that] accounted for Dave's military time 'counting' towards his Social Security Annuity Supplement; [and it] included Dave working after retiring from USPS." [DE 20 at 6]. Moreover, the Retirement Plan shown to the Troths had several features including Dave's military time

14

counting, Dave being able to earn an infinite amount after retiring, and both their life insurance policies being rendered unnecessary. *Id*. at 7. These are "representations concerning past or existing facts—the present features or terms of the proposed plan—and not mere statements of opinion or promises of future action." *Kapoor*, 49 N.E.3d at 123 (quotation omitted). "[A]ctual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995) (citation omitted). While the statements at issue in this case are relevant to future occurrences, in the context of their explanation to the Troths, they were a part of a broader retirement plan that Mr. Warfield was presenting to them and were not promises of future action.

Therefore, the Court denies the defendants' motion to dismiss the fraud claims against Mr. Warfield and does not find the representations made in paragraphs 111, 112, and 113 of the amended complaint to be representations of future consequences.

## C. Individual Claims Against Gary Aiello (Counts VII, VIII, and IX)

The defendants attack all claims brought against Gary Aiello in his personal capacity (negligence, negligent misrepresentation, *respondeat superior*). Mr. Aiello is the "controlling officer/executive" of MyFedBenefits. [DE 20 ¶ 16]. The defendants argue the Troths' claims impermissibly attempt to hold Mr. Aiello liable on account of his title of officer.

A corporate officer is "generally not personally liable for the torts of the corporation or other officers or agents merely because of [his] office." *State, Civ. Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). The Troths claim Mr. Aiello can be held liable under *Brown v. Owen Litho Serv., Inc.*, 384 N.E.2d 1132 (Ind. Ct. App. 1979). But that case is inapposite to this discussion. *Brown* discusses the well-established rule that a corporate

agent can be liable for a corporation's contractual obligations if he withholds his principal's identity. *Id.* at 1135. That does not inform whether an officer can be responsible for damages sounding in tort; in fact, he cannot be held liable unless he personally participated in or authorized the tort. *Civ. Rights Comm'n*, 738 N.E.2d at 1050

As with much of the Troths' complaint, this ends in a mixed result. Their claim for *respondeat superior* liability seeks to hold Mr. Aiello accountable for the actions of his agent, Mr. Warfield, but he cannot be held liable as the principal by virtue of his title alone. *Id.* The Troths have, however, pleaded other facts to support Mr. Aiello's personal involvement in other alleged torts. *See id.* Although he would not normally be liable for his negligent supervision or retention of Mr. Warfield, he is alleged to have personally made decisions or omissions when there was a duty.[4] The Troths allege he failed to follow his own policies and did not review financial information provided by Mr. Warfield and that he supplied them with false information. Because the Troths cannot hold Mr. Aiello vicariously liable by way of his title, Count IX (*respondeat superior*) must be dismissed; however, Counts VII (negligence) and VIII, (negligent misrepresentation) survive because they allege Mr. Aiello's personal involvement or authorization. The Court further addresses the claim of negligent misrepresentation below.

**D.     Negligent Misrepresentation (Counts VIII and XVII)**

The defendants next tackle the Troths' claims of negligent misrepresentation against Mr. Aiello and MyFedBenefits.[5] They argue these claims fall outside the contours of the cause of

---

[4] The defendants have not argued any other reason for dismissing the Troths' negligence claim, including the elements of duty or breach.

[5] The Troths also bring this claim against the two other insurance defendants, one of whom has been dismissed (Nassau Reinsurance LLC). The other, PHL Variable Insurance, brought a motion to dismiss claims against it in the original complaint; however, that motion became moot upon the filing of the Troths' amended complaint. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (an amended complaint "supersedes all previous complaints and controls the case from that point forward"). PHL has not since renewed its motion to dismiss nor did it move to join this motion to dismiss.

action as currently recognized under Indiana law. In response, the Troths assert their claim is "textbook" negligent misrepresentation.

Although long recognized as an actionable tort under Indiana common law, *see Passmore v. Multi-Mgmt. Servs. Inc*., 810 N.E.2d 1022, 1025 (Ind. 2004), negligent misrepresentation law in Indiana has been described as "relative chaos." *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir. 1994). Indiana has adopted the definition of negligent misrepresentation from the *Restatement (Second) of Torts* § 552(1), which provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010). Indiana courts have historically applied section 552(1) quite narrowly. *See Thomas v. Lewis Eng'g, Inc.*, 848 N.E.2d 758, 760 (Ind. Ct. App. 2006). For decades, the tort was limited to the employer-employee relationship, *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623 (Ind. Ct. App. 1983); *Trytko*, 28 F.3d at 721 (observing "Indiana courts have declined to extend [negligent misrepresentation] beyond the employment context"), but it has recently been expanded to include those whose profession includes the giving of opinions. *See Integrity*, 929 N.E.2d at 747; *Jeffrey v. Methodist Hosps.*, 956 N.E.2d 151, 156 n.7 (Ind. Ct. App. 2011). The class of professionals who could be subject to a negligent misrepresentation claim includes, but is not limited to, "brokers, attorneys, abstractors, and surveyors." *Jeffrey*, 956 N.E.2d at 156 n.7 (declining to limit the class of professionals to brokers, attorneys, abstractors, and surveyors).

The Indiana Supreme Court's most recent statement on this area of the law was in *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742 (Ind. 2010). There the Court attempted

17

to quell some of the chaos surrounding this cause of action. Relying on a number of factors outlined in the *Restatement (Third) of Economic Torts and Related Wrongs* § 9, cmt. f (Council Draft No. 2, 2007), the Court determined the tort of negligent misrepresentation could be extended to create a duty for title insurers to communicate the state of a title accurately. *See Integrity*, 929 N.E.2d at 748-49. The factors relevant to the Court's decision included that title commitments are normally relied upon by insureds; that there was an advisory relationship between the defendant and the plaintiff, that the defendant had superior knowledge and was in the business of providing such knowledge, and that the information was provided in response to a specific request and designed to guide the plaintiff in making a decision. *Id.*

Since the *Integrity* decision, there has been limited discussion from the Indiana courts concerning the impact of the *Integrity* decision; however, the Indiana Court of Appeals has signaled further growth. *Jeffrey*, 956 N.E.2d at 157. In *Jeffrey*, the court found Indiana law did not foreclose a claim of negligent misrepresentation against a hospital. In *Jeffrey*, the plaintiffs sought to adopt a child, but would only do so if the child had no signs of significant health issues. *Id.* at 153. The plaintiffs relied on the hospital's social worker and nurse for information about the child's health. *Id.* It was later discovered the child had medical complications that were known by the hospital, but undisclosed to plaintiffs, at the time of the adoption. *Id.* at 154. Relying on the factors outlined in *Integrity*, the court could not say "that an action for negligent misrepresentation was, as a matter of law, unavailable to the [plaintiffs]" against the hospital. *Id.* at 156-57 (citing *Integrity*, 929 N.E.2d at 750).

Despite Indiana's development in this area of law, some federal courts applying Indiana law have been tentative to push this expansion past those claims traditionally recognized. *Compare Origin Healthcare Solutions LLC*, 2014 WL 6750042 (declining to expand negligent

misrepresentation to a sales representative), *and Samaron Corp. v. United of Omaha Life Ins. Co.*, 2014 WL 4906314, at *13 (N.D. Ind. Sept. 29, 2014) (declining to expand negligent misrepresentation to an insurer because it is not the court's role "to expand upon the availability of tort remedies that Indiana has made clear are to be very limited in scope"),[6] *with Technicolor USA, Inc. v. Nat'l Union Fire Ins. Co.*, 2019 WL 2106681, at *4 (S.D. Ind. May 14, 2019) (finding Indiana law did not definitively foreclose plaintiff's claim of negligent misrepresentation against insurer for purposes of assessing fraudulent joinder, but withholding judgment as to whether Indiana law would recognize the claim under the circumstances presented), *and Harrison Mfg., LLC v. Bienias*, 2013 WL 6486668, at *6 (S.D. Ind. Dec. 10, 2013) (applying Indiana negligent misrepresentation to a professional broker).

Considering the recent expansion of this cause of action and the Troth's well-pleaded facts, the Court finds the claims of negligent misrepresentation survive that defendants' motion to dismiss. MyFedBenefits, through Mr. Warfield and Mr. Aiello, is alleged to have supplied specific information to the Troth's request about how Mr. Troth's military service would affect his benefits. Mr. Aiello is alleged to have neglected to review the proposed plan that contained misinformation in it. The Troths assigned great importance to this information, relied on it, and have incurred financial loss as a result. *Integrity*, 929 N.E.2d at 749 ("[a]n actor may undertake a duty when it supplies specific information in response to a specific request that makes it clear the recipient intends to attach significant importance to the information in making a decision that

---

[6] The *Samaron* court earlier found the plaintiff's claim of negligent misrepresentation survived defendant's motion to dismiss; however, it raised its concerns that the claim might not be "a viable cause of action under the facts of the present case." *See Samaron Corp. v. United of Omaha Life Ins. Co.*, 2013 WL 12321925, at *3 n.2 (N.D. Ind. Apr. 5, 2013). The court later found for the defendant on summary judgment. *See* 2014 WL 4906314, at *13 (finding that although plaintiff's argument "that *Integrity* would allow for the tort of negligent representation under the facts of this case is certainly not frivolous, it does represent an expansion of the tort as currently recognized in Indiana").

exposes the recipient to a risk of loss if the information is inaccurate.") (quoting *Restatement (Third) of Economic Torts and Related Wrongs* § 9, cmt. f (Council Draft No. 2, 2007)) (internal quotation marks omitted).

The Troths' claims are comparable to the claims in *Jeffrey*, where the plaintiffs relied on the hospital and its staff to provide accurate information about the child they sought to adopt. 956 N.E.2d at 153-54. The Court also notes that the profession, insurance and financial planning, would not so expand the recognized professions already subject to claims of negligent misrepresentation. *See Integrity*, 929 N.E.2d at 748-49 (title insurance); *Jeffrey*, 956 N.E.2d at 156 n.7 (professions include brokers, attorneys, abstractors, surveyors, and allowing a claim to proceed against a hospital); *cf. Origin Healthcare Solutions LLC*, 2014 WL 6750042, at *7 (sales representative was not a profession recognized by Indiana law).

Additional facts might show this isn't the kind of scenario suited for negligent misrepresentation, but that is a decision set for a later point in this litigation. For now, the Troths have alleged facts that, accepted as true, state a claim for negligent misrepresentation, *Iqbal*, 556 U.S. at 678, and that the Court believes Indiana law would allow to proceed at this stage. *See Jeffrey*, 956 N.E.2d at 157; *see also Vale Park Animal Hosp., LLC*, 2020 WL 1139413 at *3 ("this court will rely on the substantive law of Indiana and attempt to predict how the Indiana Supreme Court would decide the issue presented here").

## E.      Loss of Consortium (Counts XXI and XXII)

The Troths have brought individual loss of consortium claims against all named defendants. The defendants argue that the Troths cannot assert loss of consortium when there has been no physical injury. States are divided on whether physical injury of the injured spouse is a prerequisite of a loss of consortium claim. *See, e.g.*, *Barnes v. Outlaw*, 964 P.2d 484, 486 (Ariz.

1998) (allowing loss of consortium claims without underlying physical injury); *Molien v. Kaiser Found. Hosp.,* 616 P.2d 813, 822-23 (Cal. 1980); *Browning-Ferris Industries. Inc. v. Lieck,* 881 S.W.2d 288, 294-95 (Tex. 1994) (holding loss of consortium claims are premised on the physical injury of the injured spouse); *A.L. Williams & Assocs. v. Williams*, 517 So. 2d 596, 598 (Ala. 1987) (same).

The defendants argue Indiana has adopted the definition of loss of consortium from the Restatement (Second) of Torts § 693(1), which holds a tortfeasor liable for the "illness or other bodily harm" of one spouse. In truth, the defendants provide little to support that statement. Although Indiana appears to have incorporated parts of section 693 (*e.g.*, the rules of joinder and damages after death) these authorities hardly tell this Court whether Indiana has adopted the definition of loss of consortium in section 693(1). *See Durham v. U-Haul Int'l*, 745 N.E.2d 755, 765 (Ind. 2001) (acknowledging section 693 cmt. f regarding damages after death has been adopted by most states); *Rosander v. Copco Steel & Engineering Co.*, 429 N.E.2d 990, 992 (Ind. Ct. App. 1982) (adopting the joinder rule set forth in section 693 cmt. g).

In fact, Indiana courts have routinely used language different than section 693 when discussing or defining loss of consortium. Whereas section 693(1) holds a defendant liable for the "illness or other bodily harm" of the injured spouse, Indiana law often discusses liability arising from a spouse's "injury." *See, e.g.*, *Durham*, 745 N.E.2d at 764 (loss of consortium is derivative of the "injured spouse's *personal injury* claim") (emphasis added); *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) ("Absent an actionable *injury* to one spouse, the other spouse cannot recover for loss of consortium.") (quoting *Bd. of Comm'rs of Cass Cnty. v. Nevitt*, 448 N.E.2d 333, 341 (Ind. Ct. App. 1983)) (emphasis added); *Rosander*,

429 N.E.2d at 991 ("a wife has a cause of action for loss of consortium resulting from *injury* sustained by her husband") (emphasis added).

There appears to be a dearth of case law on loss of consortium claims in the context of non-physical injuries, but at least one Indiana court analyzed the possibility of such a claim in the context of invasion of privacy and intentional infliction of emotion distress tort claims. *See Watters v. Dinn*, 666 N.E.2d 433, 438 (Ind. Ct. App. 1996). Without clear guidance from binding Indiana authority, the Court finds no reason to believe Indiana courts would limit the concept of an "actionable injury," *Miller*, 11 N.E.3d at 963, to only mean bodily harm, especially when Indiana recognizes instances where an injured spouse can recover mental and emotional damages sans physical injury (as discussed in more detail later). The Court would note though that to the extent the Troths are trying to recover based on Mr. Troth's loss of earnings, that is prohibited by the Indiana Supreme Court. *See Troue v. Marker*, 252 N.E.2d 800, 806 (1969) (holding that "a wife in this state is entitled to recover for loss of consortium against a wrong-doer who has injured her husband, but she is not entitled to recover for loss of support due from the husband to such wife in such action."). Because the Troths have alleged loss of consortium claims derivative of actionable claims for mental and emotional damages (*i.e.*, fraud), the Court denies the motion as to Counts XXI and XXII.

## F.     Mental and Emotional Damages

Finally, the defendants request the Court dismiss the Troths' claims for mental and emotional damages. The Troths respond that their mental and emotional damages arise from their fraud claims, which do not require a physical injury to support such damages. That is correct under Indiana's modified impact rule. *Shuamber v. Henderson*, 579 N.E.2d 452, 454-55 (Ind. 1991) (holding damages for mental or emotional distress are recoverable only when

accompanied by physical injury, but excepts certain torts such as "fraud, malice or like motives involving intentional conduct") (quoting *Naughgle v. Feeney-Hornak Shadeland Mortuary, Inc.*, 498 N.E.2d 1298, 1301 (Ind. Ct. App. 1986)). An exception to Indiana's impact rule has been recognized in at least one other case involving an intentional tort. *See Patel v. United Fire & Cas. Co.,* 80 F. Supp. 2d 948, 959 (N.D. Ind. 2000). But in regard to their other counts of non-intentional torts in this suit, the Troths do not attempt to defend their assertion of mental and emotional damages. Because these claims cannot support such damages under Indiana law, the Court dismisses any request for mental and emotional damages not associated with the claims of fraud. *See Shuamber*, 579 N.E.2d at 454-55 (damages for mental and emotional distress are available for fraud claims without physical harm).

## IV. CONCLUSION

For all these reasons, the Court GRANTS in part and DENIES in part the motion to dismiss. [DE 22]. Specifically, the Court:

- GRANTS the motion as to Count II only insofar as it alleges a private right of action, but the Troths may proceed on a theory of *per se* negligence;

- DENIES the request to dismiss Counts III and XIX;

- DENIES the request to dismiss Counts VII (negligence) and VIII (negligent misrepresentation) as the Troths have alleged facts concerning Mr. Aiello's personal involvement or authorization;

- GRANTS the request to dismiss Count IX (*respondeat superior* liability of Gary Aiello);

- DENIES the request to dismiss Count XVII (negligent misrepresentation);

- DENIES the request to dismiss Counts XXI and XXII (loss of consortium); and

- GRANTS the request to dismiss the Troths' claims for mental and emotional damages for all claims other than fraud.

Now to address some final housekeeping matters. Mr. Warfield's unopposed motion for joinder is GRANTED. [DE 36]. Because the Troths have submitted a notice of voluntary dismissal of Nassau Reinsurance, LLC [DE 31], the court DISMISSES all claims against it (Counts X, XI, and XII) and DENIES AS MOOT its motion to dismiss. [DE 16]. In light of the amended complaint, the Court DENIES AS MOOT the motion to dismiss by PHL Variable Insurance Company. [DE 18]. Finally, for the sake of judicial efficiency, the Court ORDERS the Troths to file an amended complaint consistent with the Court's decision by November 6, 2020.

SO ORDERED.

ENTERED:  October 20, 2020

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court